# EXHIBIT 2

$44,600,000.00

# PROMISSORY NOTE
(Monthly Floating Term SOFR Rate)

**THIS PROMISSORY NOTE** (this "Note") is made in Pflugerville, Texas as of May 27, 2022, in the principal amount of Forty-Four Million Six Hundred Thousand and 00/100 Dollars ($44,600,000.00).

## RECITALS

A. This Note is made by **TAWR PROPERTY OWNER, LTD.,** a Texas limited partnership ("Borrower"), and is payable to the order of **FIFTH THIRD BANK, NATIONAL ASSOCIATION**, its successors and assigns ("Lender") pursuant to the terms and conditions set forth in that certain Construction Loan Agreement dated as of even date herewith by and between Borrower and Lender (the "Loan Agreement"). The amount disbursed by Lender to Borrower, repayment of which is evidenced by this Note, is referred to as the "Loan".

B. This Note is secured, among other items, by (i) a certain Construction Deed of Trust, Security Agreement, Fixture Filing and Assignment of Leases and Rents (the "Security Instrument"), dated of even date herewith, executed and delivered by Borrower for the benefit of Lender, encumbering certain interests in real and personal property as more particularly described as the Property in the Security Instrument (the "Property"), and (ii) certain other documents securing repayment of this Note, including, without limitation, a Guaranty of Payment and Carry of even date herewith from Darren Casey ("Guarantor") for the benefit of Lender (the "Payment Guaranty"), and (iii) a Guaranty of Completion of even date herewith from Guarantor for the benefit of Lender (the "Completion Guaranty") (the Security Instrument, the Loan Agreement, the Payment Guaranty, the Completion Guaranty, and all other documents evidencing or securing the Loan are hereinafter collectively referred to herein as the "Loan Documents"). All of the agreements, conditions, covenants, provisions and stipulations contained in the Security Instrument and other Loan Documents are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein and Borrower covenants and agrees to keep and perform them, or cause them to be kept and performed, strictly in accordance with their terms.

1. **Agreement to Pay**. Borrower hereby promises to pay to the order of Lender the principal sum of Forty-Four Million Six Hundred Thousand and 00/100 Dollars ($44,600,000.00), or so much thereof as may be outstanding hereunder, in lawful money of the United States of America on or before the earlier of May 27, 2027 (the "Maturity Date") or upon acceleration of the Note, together with interest thereon at the rate or rates hereinbelow set forth.

2. **Defined Terms**. In addition to the terms defined elsewhere in this Note, the following terms shall have the following meanings when used in this Note. All capitalized terms used in this Note and not otherwise defined shall have the meanings ascribed thereto in the Loan Agreement.

    F. "Default" shall mean when used in reference to this Note or any other document, or in reference to any provision or obligation under this Note or any other document, the occurrence of an event or the existence of a condition which, with the passage of time or the giving of notice, or both, would constitute an Event of Default under this Note or such other document, as the case may be.

    G. "Default Rate" as defined in Section 6 hereof.

H.      "Event of Default" shall mean (i) when used in reference to this Note, one or more of the events or occurrences referred to in Section 10.A of this Note; and (ii) when used in reference to any other document, a default or event of default under such document that has continued after the giving of any applicable notice and the expiration of any applicable grace or cure periods.

3.      **Computation of Interest**.  Moneys deposited by Lender in an escrow shall be deemed to have been disbursed as of, and shall bear interest from, the date of deposit in escrow.  Interest on amounts disbursed under this Note shall accrue commencing on the day on which the disbursement of proceeds of the Loan or applicable portion thereof is made.  Payments of interest that are periodically required pursuant to the terms of this Note shall include interest accrued to the day on which the payment is made.  Payments of principal on this Note shall include interest on the amount paid to the date of payment if payment is received prior to 2:00 P.M. Eastern Time, and if payment is received after such time, payment of principal on this Note shall include interest to and including the day of payment.

4.      **Interest Rate Terms.**

A.      Additional Defined Terms.  In addition to the terms defined elsewhere in this Note, the following terms shall have the following meanings when used in this Note:

"Adjusted Base Rate" shall mean the greater of (a) a floating rate per annum equal to (i) the then-applicable Base Rate plus (ii) the then-applicable Base Rate Margin or (b) the Minimum Interest Rate.

"Adjusted Term Rate" shall mean (a) the greater of (i) the Floor and (ii) a floating rate per annum equal to the then-applicable Term Rate plus (b) the then-applicable Term Rate Margin.

"Advance" shall mean any amount disbursed by Lender to Borrower, which comprises the Loan and the repayment thereof is evidenced by this Note.

"Base Rate" shall mean the Prime Rate.  The determination of the Base Rate, together with any other changes relating thereto, including without limitation the Base Rate Margin, the way in which the Interest Rate is calculated, the timing and frequency of determining rates and making payments of interest, and other administrative matters as may be appropriate, in Lender's reasonable discretion, shall be binding upon Borrower upon a written notice from Lender absent manifest error.  Such notice shall be deemed to be an amendment to this Note without the requirement for any further action.

"Base Rate Loan" shall mean such portion of the outstanding principal balance of the Loan that is bearing interest at the Adjusted Base Rate.

"Base Rate Margin" shall mean such applicable margin (whether it be a positive adder or a negative adder) as reasonably determined by Lender.

"Business Day" shall mean (a) with respect to all notices and determinations, including Interest Payment Dates, in connection with the Term Rate, any day that commercial banks in New York, New York are required by law to be open for business and that is a U.S. Government Securities Business Day, which means any day other than a Saturday, Sunday, or day on which the Securities Industry and Financial Markets Association recommends that the fixed income departments of its members be closed for the entire day for purposes of trading in United States government securities, and (b) in all

2

other cases, any day on which commercial banks in New York, New York or Cincinnati, Ohio are required by law to be open for business; *provided* that, notwithstanding anything to the contrary in this definition of "Business Day", at any time during which a Rate Management Agreement with Lender is then in effect with respect to all or a portion of the Loan, then the definitions of "Business Day" and "Banking Day", as applicable, pursuant to such Rate Management Agreement shall govern with respect to all applicable notices and determinations in connection with such portion of the Loan subject to such Rate Management Agreement. Periods of days referred to in the Loan Documents will be counted in calendar days unless Business Days are expressly prescribed.

"Conforming Changes" shall mean, with respect to the use, administration of, or any conventions associated with the applicable interest rate index or a substitute index, any changes to the terms of this Note related to the applicable interest rate index or the replacement of an interest rate index, including changes to the definition of "Business Day," the timing, frequency, and methodology of determining rates and making payments of interest, lookback periods or observation shifts, and other technical, administrative, or operational matters.

"Daily Compounded SOFR" means a rate based on SOFR with interest accruing on a compounded daily basis in arrears with a methodology and conventions selected by Lender.

"Daily Simple SOFR" shall mean a rate based on SOFR with interest accruing on a simple daily basis in arrears with a methodology and conventions selected by the Lender.

"Dollars" or "$" shall mean dollars in the lawful currency of the United States of America.

"Floor" shall mean a rate of interest equal to zero percent (0.0%) per annum.

"Interest Payment Date" shall mean, all as determined by Lender in accordance with the Loan Documents and Lender's loan systems and procedures periodically in effect (and subject to the terms of any Billpayer Service, as applicable), the first calendar day of each calendar month; provided that, if the first calendar day of a particular calendar month is not a Business Day, then the Interest Payment Date occurring in that particular calendar month shall be the next succeeding Business Day (unless the next succeeding Business Day falls in a new calendar month, in which case the Interest Payment Date occurring in that particular calendar month shall be the immediately preceding Business Day).

"Interest Rate" shall mean, as applicable, (i) the Adjusted Term Rate, (ii) the Adjusted Base Rate, or (iii) if a Successor Rate or other alternative rate is selected pursuant to the terms of this Note, such rate plus any adjustment or applicable margin.

"Minimum Interest Rate" shall mean the Floor plus the then-applicable Term Rate Margin.

"Prime Rate" shall mean, for any day, the floating rate of interest established from time to time by Lender at its principal office as its "Prime Rate", whether or not Lender shall at times lend to borrowers at lower rates of interest or, if there is no such prime rate, then such other rate as may be substituted by Lender for the prime rate. Each determination by Lender of the Prime Rate shall be binding and conclusive in the absence of manifest

error.

"SOFR" shall mean, with respect to any Business Day, a rate per annum equal to the secured overnight financing rate for such Business Day published by the Federal Reserve Bank of New York (or a successor administrator of the secured overnight financing rate) on its website currently at http://newyorkfed.org (or any successor source identified by the SOFR administrator from time to time) at approximately 2:30 p.m. (New York City time) on the immediately succeeding Business Day.

"Spread Adjustment" shall mean a mathematical or other adjustment to an alternate benchmark rate selected pursuant to Section 4.F.(ii) of the Note and such adjustment may be positive, negative, or zero subject to the specific Spread Adjustments set forth in Section 4.F.(ii).

"Successor Rate" shall having the meaning given in Section 4.F.(ii)(a).

"Term Rate" shall mean the Term SOFR Rate. Each determination by Lender of the Term Rate shall be conclusive and binding in the absence of manifest error.

"Term Rate Adjustment Date" shall have the meaning given in Section 4.C.(ii).

"Term Rate Loan" shall mean such portion of the outstanding principal balance of the Loan that is bearing interest at the Adjusted Term Rate.

"Term Rate Margin" shall mean two and one-half percent (2.50%) per annum.

"Term SOFR Rate" shall mean the forward-looking SOFR rate administered by CME Group, Inc. (or other successor administrator) and published on the applicable Bloomberg LP screen page (or such other commercially available source providing such quotations as may be selected by Lender) relating to quotations for one month, fixed by the administrator two Business Days prior to such date of determination (provided, however, that if the Term SOFR rate is not published for such Business Day, then the Term SOFR rate shall be determined by reference to the immediately preceding Business Day on which such rate is published), rounded upwards, if necessary, to the next $1/16^{th}$ of 1% and adjusted for reserves if Lender is required to maintain reserves with respect to the relevant Advances, all as determined by Lender in accordance with the Note and Lender's loan systems and procedures periodically in effect.

B.  Interest Accrual.

(i) Interest on the Loan shall accrue on the outstanding principal balance of this Note commencing on the date of the initial disbursement of the Loan until the Loan has been fully paid and satisfied in cash.

(ii) Interest on all Term Rate Loans shall be calculated based on a 360-day year and charged for the actual number of days elapsed.

(iii) If the Base Rate is selected as or becomes a successor interest rate pursuant to the terms of this Note, interest shall be calculated based on a 360-day year and charged for the actual number of days elapsed.

C. Interest Rate Provisions.

(i) Subject to the terms hereof, the outstanding principal balance of this Note shall bear interest at a rate per annum equal to the Adjusted Term Rate. Each determination of the Interest Rate by Lender shall be conclusive and binding on Borrower in the absence of manifest error.

(ii) The Adjusted Term Rate: (a) shall initially be determined as of the date of the initial disbursement of proceeds of the Loan, and (b) shall adjust automatically on each Interest Payment Date thereafter (each of the foregoing being a "Term Rate Adjustment Date"). Any change in the Adjusted Term Rate resulting from a change in the Term Rate shall become effective as of each such Term Rate Adjustment Date in accordance with this Note and Lender's loan systems and procedures periodically in effect. Lender shall not be required to notify Borrower of any adjustment in the Term Rate; *however*, Borrower may request a quote of the prevailing Term Rate on any Business Day.

(iii) All as determined by Lender in accordance with the Loan Documents and Lender's loan systems and procedures periodically in effect, interest shall be paid in arrears on each Interest Payment Date. Lender may estimate the amount of interest that Borrower will owe on Borrower's periodic statements and Lender may adjust the amount of interest owed on each subsequent statement provided to Borrower to reflect any differential between the estimated amount of interest shown on Borrower's preceding statement and the actual amount of interest determined to have been due by Lender on the preceding Interest Payment Date. Borrower agrees to pay the amount shown due on the Interest Payment Date on each of Borrower's periodic statements on each Interest Payment Date.

(iv) If any portion of the Loan is converted or made as a Base Rate Loan pursuant to the terms of this Note, the Base Rate shall adjust automatically with each change in the Prime Rate occurring thereafter. Any change in the Base Rate shall become effective as of the date of each change in the Base Rate in accordance with Lender's loan systems and procedures periodically in effect. Lender shall not be required to notify Borrower of any adjustment in the Base Rate; *however*, Borrower may request a quote of the prevailing Base Rate on any Business Day.

D. Prepayments. The outstanding principal balance of this Note may be prepaid, either in whole or in part, without penalty or premium, if applicable, at any time and from time to time upon five (5) days prior written notice to Lender. If a successor interest rate is selected pursuant to Section 4.F below, any prepayment shall be subject to Lender's then-current requirements and procedures.

E. Additional Costs. Borrower hereby irrevocably agrees to reimburse and indemnify Lender from all increased costs and fees incurred by Lender in connection with this Note subsequent to the date of the initial Advance to Borrower under this Note and relating to or arising from (x) the offering of rates of interest based upon the Term Rate or other Successor Rate (or other alternative benchmark rate) or (y) a change in government regulation. Without limiting the generality of the foregoing, if (any of the following being a "Change"): (i) any law, rule, regulation, guideline, or directive (in each case whether or not having the force of law) is passed, enacted, promulgated, ordered, issued or adopted after the date of the initial Advance to Borrower under this Note, (ii) there is any change, after the date of the initial Advance to Borrower under this Note, in any law, rule, regulation, guideline, or directive (in each case whether or not having the force of law and including, without limitation, any request, rule, guideline or directive (A) in connection

with the Dodd-Frank Wall Street Reform and Consumer Protection Act (as amended, the "Dodd-Frank Act") or (B) enacted, promulgated, adopted, issued or implemented by the Bank of International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority), or the United States or foreign financial regulatory authorities), or in the interpretation or administration thereof by any governmental authority, central bank or comparable agency charged with the interpretation, application or administration of any of the foregoing, or (iii) Lender complies with any request or directive made after the date of the initial Advance to Borrower under this Note regarding capital adequacy (whether or not having the force of law) from any such authority, central bank or comparable agency, and such Change shall:

> (i) increase the cost to Lender, by an amount which Lender deems to be material, of making, converting into, continuing or maintaining any portion of the Loan subject to the Term Rate (or Successor Rate or alternative benchmark rate), or reduce any amount receivable hereunder in respect thereof, or

> (ii) have the effect of reducing the rate of return on Lender's capital as a consequence of its obligations hereunder to a level below that which Lender could have achieved but for such Change by an amount deemed by Lender to be material,

then, in any and each such case, after submission by Lender to Borrower of a written request therefor, Borrower shall pay Lender any additional amounts necessary to compensate Lender for such increased cost or reduction. Lender's reasonable determination of the amount of such reimbursement shall be conclusive in the absence of manifest error. Notwithstanding anything to the contrary contained herein, for all purposes of this Note, all requests, rules, guidelines and directives (I) in connection with the Dodd-Frank Act or (II) enacted, promulgated, adopted, issued or implemented by the Bank of International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority), or the United States or foreign financial regulatory authorities shall, in each case, be deemed to constitute a Change whether or not such request, rule, guideline or directive has the force of law and regardless of the date on which such request, rule, guideline or directive was enacted, promulgated, adopted, issued or implemented.

> F. <u>Term Rate Replacement</u>.

> (i) <u>Temporary Replacement of the Term Rate</u>. In the event Lender shall determine that no Successor Rate (as defined below) has been determined in accordance with <u>Section 4.F.(ii)</u> and either: (A) the Term Rate is unavailable, unrepresentative, or unreliable, (B) the Term Rate as determined by Lender will not adequately and fairly reflect the cost to Lender of making or maintaining advances under the Note, or (C) the making or funding of Term Rate Loans has become impracticable; then, in any such case, Lender shall promptly provide notice of such determination to Borrower (which shall be conclusive and binding on all parties hereto absent manifest error), and (x) Lender's obligations in respect of the Term Rate shall be suspended forthwith, (y) Borrower's right to utilize Term Rate pricing as set forth in this Note shall be suspended forthwith, and (z) amounts outstanding hereunder shall, on and after such date, bear interest at a rate per annum equal to the Adjusted Base Rate until Lender determines that the circumstances giving rise to such suspension no longer exist, in which event Lender shall so notify Borrower. If a Successor Rate has been determined in accordance with <u>Section 4.F.(ii)</u> and Lender determines that any of the circumstances described in clauses (A)-(C) of this paragraph has occurred with respect to the Successor Rate, then clauses (x)-(z) of this paragraph shall apply as if each reference to Term Rate therein were a reference to the Successor Rate.

(ii) Permanent Replacement.

(a) Notwithstanding anything to the contrary herein or in any other Loan Document (and any Rate Management Agreement shall be deemed not to be a "Loan Document" for purposes of this Section 4.F.(ii)), but without limiting Section 4.F.(i) above, if Lender determines (which determination shall be conclusive and binding on all parties hereto absent manifest error) that any of the circumstances described in Section 4.F.(i)(A)-(C) has occurred and is unlikely to be temporary or the administrator of the Term Rate or a governmental authority having or purporting to have jurisdiction over Lender or such administrator has made a public statement identifying a specific date (the "Scheduled Unavailability Date") after which the Term Rate will no longer be representative or made available or used for determining the interest rate of loans or otherwise cease or will no longer be in compliance or aligned with the International Organization of Securities Commissions (IOSCO) Principles for Benchmarks, and there is no successor administrator satisfactory to Lender, then on a date and time determined by Lender (the "Term Rate Replacement Date") or the applicable Interest Payment Date, but no later than the Scheduled Unavailability Date, the Term Rate will be replaced hereunder and under any other Loan Document with Daily Simple SOFR, so long as such rate can be calculated by Lender and Lender determines in its sole discretion such rate is administratively feasible (the "Successor Rate").

(b) If the Successor Rate is based on Daily Simple SOFR, interest shall be due and payable on a monthly basis.

(c) Notwithstanding anything to the contrary herein, if the Lender determines that Daily Simple SOFR is not available and administratively feasible prior to the Term Rate Replacement Date, or if any of the circumstances described in Section 4.F.(ii)(a) with regard to the Term Rate has occurred with respect to a Successor Rate then in effect, Lender may amend this Note solely for the purpose of replacing the Term Rate or any then current Successor Rate in accordance with this Section 4.F.(ii) with another alternative benchmark rate and a "Spread Adjustment", giving due consideration to any evolving or then existing convention for similar U.S. dollar denominated credit facilities and any recommendations of a relevant governmental authority, and which Spread Adjustment or method for calculating such Spread Adjustment shall be published on an information service as selected by Lender from time to time in its reasonable discretion. Any such alternative benchmark rate and Spread Adjustment shall constitute a Successor Rate hereunder. Any such amendment shall become effective on the date set forth in a written notice provided by Lender to the Borrower.

(d) Lender will promptly (in one or more notices) notify the Borrower of the implementation of any Successor Rate. Any Successor Rate shall be applied in a manner consistent with market practice; provided that to the extent such market practice is not administratively feasible for Lender, such Successor Rate shall be applied in a manner as otherwise reasonably determined by Lender.

(e) In connection with the implementation and administration of a Successor Rate (including, without limitation, pursuant to Section 4.F.(ii)(g), below), Lender will have the right to make Conforming Changes from time to time and, notwithstanding anything to the contrary herein or in any other Loan

Document, any amendments implementing such Conforming Changes will become effective without any further action or consent of Borrower; provided that Lender shall provide notice of such Conforming Changes to the Borrower reasonably promptly after such amendment becomes effective.

(f) Notwithstanding anything to the contrary herein, if at any time the Successor Rate would be less than the Floor, the Successor Rate will be deemed to be the Floor for the purposes of this Note and the other Loan Documents.

(g) Further, if the interest rate to be replaced is rounded upwards to the next 1/16th of 1% under the terms of this Note or any Loan Document, the Successor Rate shall also be rounded up to the next $1/16^{th}$; provided further that this provision governing rounding shall not apply if the Borrower has a Rate Management Agreement in effect with respect to all or part of an Advance.

(h) Notwithstanding anything to the contrary contained herein, if, after the Closing Date, the Borrower enters into a Rate Management Agreement with respect to all or part of an Advance and the floating interest rate hedged under the Rate Management Agreement is Daily Simple SOFR, the Lender may replace the Term Rate (including any Successor Rate) hereunder with Daily Simple SOFR and a Spread Adjustment without consent of the Borrower; provided further that, if subsequent thereto, the Lender and Borrower amend such Rate Management Agreement to include, or terminate such Rate Management Agreement and enter into a new Rate Management Agreement with, a floating interest rate thereunder based on the original Term Rate under this Note, then the Lender may further replace Daily Simple SOFR hereunder with the original Term Rate (and a Spread Adjustment, if applicable) hereunder without consent of the Borrower; and, in either such event, (A) Daily Simple SOFR or the original Term Rate, as applicable, shall be a Successor Rate hereunder, and (B) the Lender shall provide written notice thereof to the Borrower.

(i) <u>Limitation of Liability</u>. Lender does not warrant or accept any responsibility for, and shall not have any liability with respect to, the administration, submission, or any other matter related to the Term Rate or any Successor Rate, including the selection of such rate, any related Spread Adjustment, or any Conforming Changes, or whether the composition or characteristics of any Successor Rate and Spread Adjustment or Conforming Changes will be similar to, or produce the same value or economic equivalence of, the initial Term Rate.

G. <u>Rounding and Rate Management Agreement</u>. At any time during which a Rate Management Agreement is then in effect with respect to this Note, the provisions contained in this Note which round up the Term Rate or the Successor Rate to the nearest 1/16th shall be disregarded and no longer of any force and effect, notwithstanding anything to the contrary contained in this Note.

H. <u>Illegality</u>. Notwithstanding any other provisions hereof, if any law shall make it unlawful for Lender to make, fund or maintain Term Rate Loans, Lender shall promptly give notice of such circumstances to Borrower. In such an event, (i) the commitment of Lender to make Term Rate Loans, continue Term Rate Loans as Term Rate Loans, or convert Base Rate Loans to Term Rate Loans shall be immediately suspended and (ii) all outstanding Term Rate Loans shall be

converted automatically to Base Rate Loans on the last day of the interest period therefor or at such earlier time as may be required by law.

5. **Payment Terms**.

    A. On each Interest Payment Date (subject to earlier prepayment as provided in Section 4.D. hereof or as otherwise provided herein or in any other Loan Document), until the Loan has been fully paid and satisfied in cash, Borrower shall make payments to Lender of all accrued interest on the outstanding principal balance of the indebtedness evidenced by this Note.

    B. Commencing on the Interest Payment Date immediately following the date that is forty-two (42) months after the Closing Date, and continuing on each Interest Payment Date thereafter until the Loan has been fully paid and satisfied in cash, Borrower shall make monthly principal payments to Lender in the amount of $66,250.00.

    C. The Loan shall be due and payable, and Borrower hereby promises to pay the outstanding principal amount of the Loan to Lender, together with all accrued interest thereon then remaining unpaid and all other unpaid amounts, charges, fees and expenses outstanding under this Note or under any of the other Loan Documents, on the Maturity Date, subject to earlier prepayment as provided in Section 4.D. hereof or as otherwise provided herein or in any other Loan Document.

6. **Late Payments; Default Rate; Fees**. If any payment is not paid within ten (10) days of the date when due under this Note or any of the other Loan Documents (except for any payment due at the Maturity Date, or upon acceleration of the Loan in accordance with the terms of the Loan Documents), Borrower agrees to pay to Lender a late payment fee of five percent (5%) of the payment amount, with a minimum fee of $20.00. After an Event of Default and while such Even of Default is continuing, Borrower agrees to pay to Lender a fixed charge of $25.00, or Borrower agrees that Lender may, without notice, increase the Interest Rate by four percent (4%) (the "Default Rate"), whichever is greater. All such interest shall be payable on demand by Lender. Lender may impose a non-sufficient funds fee for any check that is presented for payment that is returned for any reason. In addition, Lender may charge loan documentation fees as may be reasonably determined by the Lender.

7. **Maximum Interest Rate**. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with the applicable Texas law governing the maximum rate of interest payable on the indebtedness evidenced by this Note, the Loan Agreement, and the Related Debt (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount (i) contracted for, charged, taken, reserved or received pursuant to this Note, the Loan Agreement, any of the other Loan Documents or any other communication or writing by or between Borrower and Lender related to the transaction or transactions that are the subject matter of the Loan Documents, (ii) contracted for, charged, taken, reserved or received by reason of Lender's exercise of the option to accelerate the maturity of this Note and/or the Related Debt, or (iii) Borrower will have paid or Lender will have received by reason of any voluntary prepayment by Borrower of this Note and/or the Related Debt, then it is Borrower's and Lender's express intent that all amounts charged in excess of the Maximum Lawful Rate shall be automatically canceled, ab initio, and all amounts in excess of the Maximum Lawful Rate theretofore collected by Lender shall be credited on the principal balance of this Note and/or the Related Debt (or, if this Note and all Related Debt have been or would thereby be paid in full, refunded to Borrower), and the provisions of this Note, the Loan Agreement, and other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity for the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for

hereunder and thereunder; provided, however, if this Note has been paid in full before the end of the stated term of this Note, then Borrower and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Lender that interest was received in an amount in excess of the Maximum Lawful Rate, either refund such excess interest to Lender and/or credit such excess interest against this Note and/or any Related Debt then owing by Borrower to Lender. Borrower hereby agrees that as a condition precedent to any claim seeking usury penalties against Lender, Borrower will provide written notice to Lender, advising Lender in reasonable detail of the nature and amount of the violation, and Lender shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrower or crediting such excess interest against this Note and/or the Related Debt then owing by Borrower to Lender. All sums contracted for, charged, taken, reserved or received by Lender for the use, forbearance or detention of any debt evidenced by this Note and/or Related Debt shall, to the extent permitted by applicable law, be amortized or spread, using the actuarial method, throughout the stated term of this Note and/or Related Debt (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of this Note and/or the Related Debt does not exceed the Maximum Lawful Rate from time to time in effect and applicable to this Note and/or the Related Debt for so long as debt is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to this Note and/or Related Debt. Notwithstanding anything to the contrary contained herein or in any other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration. To the extent that Lender is relying on Chapter 303 of the Texas Finance Code to determine the Maximum Lawful Rate payable on the Note and/or the Related Debt, Lender will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303, as amended. To the extent United States federal law permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law, Lender will rely on United States federal law instead of such Chapter 303 for the purpose of determining the Maximum Lawful Rate. Additionally, to the extent permitted by applicable law now or hereafter in effect, Lender may, at its option and from time to time, utilize any other method of establishing the Maximum Lawful Rate under such Chapter 303 or under applicable law by giving notice, if required, to Borrower as provided by applicable law now or hereafter in effect. As used hereunder the term "Maximum Lawful Rate" shall mean the maximum lawful rate of interest which may be contracted for, charged, taken, received or reserved by Lender in accordance with the applicable laws of the State of Texas (or applicable United States federal law to the extent that such law permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law), taking into account all Charges made in connection with the transaction evidenced by this Note and the other Loan Documents. As used hereunder, the term "Charges" shall mean all fees, charges and/or any other things of value, if any, contracted for, charged, taken, received or reserved by Lender in connection with the transactions relating to this Note and the other Loan Documents, which are treated as interest under applicable law. As used hereunder, the term "Related Debt" shall mean any and all indebtedness paid or payable by Borrower to Lender pursuant to the Loan Documents or any other communication or writing by or between Borrower and Lender related to the transaction or transactions that are the subject matter of the Loan Documents, except such indebtedness which has been paid or is payable by Borrower to Lender under this Note.

8. **[RESERVED]**

9. **Non-Revolving Loan**. No amount repaid or prepaid on this Note may be borrowed again.

10. **Default and Remedies**.

    D. An "Event of Default" shall occur under this Note upon the occurrence of (a) the failure of Borrower to make any principal or interest payment owing hereunder within five (5) days

of the date when due, (b) the failure by Borrower to pay any other amount payable to Lender under this Note within five (5) days after the date when any such payment is due in accordance with the terms hereof or thereof, (c) a breach by Borrower of any of the covenants, agreements, representations, warranties or other provisions hereof, which is not cured within the grace or cure period, if any, applicable thereto, or (d) the occurrence of any Event of Default under any of the other Loan Documents. An Event of Default under this Note shall also be deemed an Event of Default under the other Loan Documents.

E. If an Event of Default has occurred and is continuing, Lender shall have the option, without demand or notice, other than specified herein or in the other Loan Documents, to declare the unpaid principal of this Note, together with all accrued interest, prepayment premium, if any, and other sums secured by the Security Instrument or other Loan Documents, at once due and payable to the extent permitted by law, to foreclose the Security Instrument and the other liens or security interests securing the payment of this Note, and to exercise any and all other rights and remedies available at law or in equity under the Security Instrument or the other Loan Documents.

F. The remedies of Lender, as provided herein or in the Security Instrument or any of the other Loan Documents shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of Lender, and may be exercised as often as occasion therefor shall arise. No act of omission or commission of Lender, including specifically any failure to exercise any right, remedy or recourse, shall be deemed to be a waiver or release of the same, such waiver or release to be effected only through a written document executed by Lender and then only to the extent specifically recited therein. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

11. **Costs and Attorneys' Fees**. If any Event of Default under this Note shall occur, or if Lender incurs any expenses or costs in connection with the protection or realization of any collateral, whether or not suit is filed thereon or on any instrument granting a security interest in said collateral, Borrower promises to pay all costs of collection of every kind, including but not limited to all appraisal costs, reasonable attorneys' fees, court costs, and expenses of every kind, incurred by Lender in connection with such collection or the protection or enforcement of any or all of the security for this Note, whether or not any lawsuit is filed with respect thereto.

12. **Waiver**. Other than notices required to be provided pursuant to any Loan Document, Borrower, and each guarantor and endorser hereon waives grace, notice, notice of intent to accelerate, notice of default, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that his or its liability and the liability of his or its heirs, beneficiaries, successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment. It is specifically agreed by the undersigned that the Lender shall have the right at all times to decline to make any such release or change in any security given to secure the payment hereof and to decline to make any such increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

13. **Notices**. All notices or other communications required or permitted hereunder shall be delivered in the manner set forth in the Loan Agreement.

14. **Application of Payments**. All payments on account of the indebtedness evidencing the Note shall first be applied to late charges and costs and fees incurred by Lender in enforcing its rights

hereunder or under the Security Instrument and the other Loan Documents, second to accrued interest on the unpaid principal balance, and third to reduce unpaid principal inverse chronological order of maturity.

15. **Bill Payer Service**. Any payments and other amounts owing under this Note shall be made at Lender's address above unless otherwise designated by Lender in writing.

16. **Miscellaneous**.

    A. The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

    B. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment. Each payment of principal, interest and/or other amount under this Note shall be paid not later than 2:00 P.M. Eastern Time on the date due therefor and funds received after that hour shall be deemed to have been received by Lender on the following Business Day. If any payment of principal, interest or any other amount due under this Note shall become due on a day which is not a Business Day, the due date for such payment shall be deemed to be the immediately preceding Business Day prior to such due date. Lender is hereby authorized to charge any account of Borrower maintained with Lender for each payment of principal, interest and other amounts due under this Note, when each such payment becomes due. All amounts payable under this Note and the other Loan Documents shall be paid by Borrower without offset or other reduction.

    C. This Note has been made and delivered at Pflugerville, Texas and all funds disbursed to or for the benefit of Borrower will be disbursed in Ft. Lauderdale, Florida.

    D. The obligations and liabilities under this Note of Borrower shall be binding upon and enforceable against Borrower and its heirs, legatees, legal representatives, successors and assigns. This Note shall inure to the benefit of and may be enforced by Lender, its successors and assigns.

    E. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the greatest extent permitted by law.

    F. If this Note is executed by more than one party as a Borrower, the obligations and liabilities of each Borrower under this Note shall be joint and several and shall be binding upon and enforceable against each Borrower and their respective successors and assigns.

    G. Lender may at any time assign its rights in this Note and the Loan Documents, or any part thereof and transfer its rights in any or all of the collateral, and Lender thereafter shall be relieved from all liability with respect to such collateral. In addition, the Lender may at any time sell one or more participations in the Note. Borrower may not assign its interest in this Note, or any other agreement with Lender or any portion thereof, either voluntarily or by operation of law, without the prior written consent of Lender.

    H. Time is of the essence of this Note and of each and every provision hereof.

    I. This Note, together with the other Loan Documents, sets forth all of the covenants, promises, agreements, conditions and understandings of the parties relating to the subject matter of

this Note, and there are no covenants, promises, agreements, conditions or understandings, either oral or written between them relating to the subject matter of this Note or other than as are set forth herein and in the other Loan Documents. This Note and the other Loan Documents supersede all prior written and oral commitments and agreements relating to the Loan. Borrower acknowledges that it is executing this Note without relying on any statements, representations or warranties, either oral or written, that are not expressly set forth herein or in the other Loan Documents.

J. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

K. Each party to this Note and the legal counsel to each party have participated in the drafting of this Note, and accordingly the general rule of construction to the effect that any ambiguities in a contract are to be resolved against the party drafting the contract shall not be employed in the construction and interpretation of this Note.

L. Borrower certifies that the proceeds of this Loan are to be used for business purposes.

17. **Choice of Laws**. This Note shall be governed by and construed in accordance with the laws of the State of Texas.

18. **JURY WAIVER**. BORROWER AND LENDER, BY ITS ACCEPTANCE HEREOF, HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG BORROWER AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS NOTE, ANY OTHER LOAN DOCUMENT, OR ANY RELATIONSHIP BETWEEN BORROWER AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE LOAN DESCRIBED HEREIN AND IN THE OTHER LOAN DOCUMENTS.

19. **JURISDICTION AND VENUE**. BORROWER HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INITIATED BY BORROWER AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF TRAVIS COUNTY, TEXAS, OR THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS OR, IF LENDER INITIATES SUCH ACTION, ANY COURT IN WHICH LENDER SHALL INITIATE SUCH ACTION AND WHICH HAS JURISDICTION. BORROWER HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY LENDER IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO BORROWER AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT PURSUANT TO THE SECURITY INSTRUMENT. BORROWER WAIVES ANY CLAIM THAT ANY SUCH JURISDICTION IS AN INCONVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE. THE EXCLUSIVE CHOICE OF FORUM FOR BORROWER SET FORTH IN THIS SECTION SHALL NOT BE DEEMED TO PRECLUDE THE ENFORCEMENT BY LENDER OF ANY JUDGMENT OBTAINED IN ANY OTHER FORUM OR THE TAKING BY LENDER OF ANY ACTION TO ENFORCE THE SAME IN ANY OTHER APPROPRIATE JURISDICTION, AND BORROWER HEREBY WAIVES THE RIGHT, IF ANY, TO COLLATERALLY ATTACK ANY SUCH JUDGMENT OR ACTION.

20. **Loan Fee**.  In consideration of Lender's agreement to make the Loan, Borrower shall pay to Lender a non-refundable fee in the amount of Two Hundred Seventy-Eight Thousand Seven Hundred Fifty and 00/100 Dollars ($278,750.00), which shall be due and payable in full as a condition precedent to the first disbursement of proceeds under this Note.

21. **Patriot Act**. Lender hereby notifies Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "Act"), it is required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Act.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, Borrower has executed, sealed and delivered this Note as of the date and year first above written.

**BORROWER:**

**TAWR PROPERTY OWNER, LTD.,**
a Texas limited partnership

By: Tacara Weiss Ranch Investors GP, LLC,
a Texas limited liability company, its General Partner

    By: TAWR Preferred Partnership, LP,
a Delaware limited partnership, its Sole Member

        By: Tacara at Weiss Ranch GP, LLC,
a Texas limited liability company, its General Partner

            By: _____
Darren B. Casey, its Manager

STATE OF TEXAS    )
                             ) SS.
COUNTY OF BEXAR  )

This instrument was acknowledged before me on this 11 day of May, 2022, by Darren B. Casey, the Manager of Tacara at Weiss Ranch GP, LLC, a Texas limited liability company, the General Partner of TAWR Preferred Partnership, LP, a Delaware limited partnership, the Sole Member of Tacara Weiss Ranch Investors GP, LLC, a Texas limited liability company, the General Partner of TAWR Property Owner, Ltd., a Texas limited partnership, on behalf of said limited partnership.

Catherine R. Freimarck
Notary Public, State of Texas

My Commission Expires:

10/27/2025

[Notary Seal: CATHERINE ROSE FREIMARCK, Notary Public, State of Texas, Comm. Expires 10-27-2025, Notary ID 133416365]