# EXHIBIT 4



May 14, 2025

## RESERVATION OF RIGHTS LETTER

**VIA FEDERAL EXPRESS**

TAWR Property Owner, Ltd.                    Darren B. Casey
200 East Basse Road, Suite 300               200 East Basse Road, Suite 300
San Antonio, Texas 78209                     San Antonio, Texas 78209
Attention: Darren Casey

Re:     Fifth Third Bank, National Association ("Lender") loan (the "Loan") to TAWR
        Property Owner, LLC, a Texas limited partnership ("Borrower") as more
        particularly described in that certain Loan Agreement between Borrower and
        Lender dated May 27, 2023 (the "Loan Agreement"); Initially capitalized terms
        used herein but not defined have the meanings set forth in the Loan Agreement

Ladies and Gentlemen:

As you know, Darren B. Casey, an individual (the "Guarantor") has failed to maintain minimum
Liquid Assets of at least $5,000,000.00 required under the Loan Documents, including, without limitation,
the Loan Agreement and of that certain Guaranty of Completion executed by Guarantor for the benefit of
Lender dated May 27, 2022 (the "Completion Guaranty") and that certain Guaranty of Payment and Carry
executed by Guarantor for the benefit of Lender dated May 27, 2022 (the "Carry Guaranty" and together
with the Completion Guaranty, collectively, the "Guaranty") for the calendar period ending on December
31, 2024. As a result, an Event of Default exists under the Loan Documents.

As of this date, Lender has not elected to exercise any of its available rights and remedies as a result
of the existence of the Event of Default. **LENDER, HOWEVER, RESERVES THE RIGHT TO
EXERCISE, AT ANY TIME AND FROM TIME TO TIME, ANY AND ALL RIGHTS AND
REMEDIES AVAILABLE TO LENDER UNDER THE LOAN DOCUMENTS, AT LAW, IN
EQUITY OR OTHERWISE, WITHOUT FURTHER NOTICE OR DEMAND.**

The description of the Loan Documents contained herein is for your information and convenience
only and shall not be deemed to limit, amplify or modify the terms or otherwise affect the Loan Documents.
The description of the Event of Default shall not be deemed to exclude the existence of other defaults or
potential defaults under the Loan Documents. The description herein of the specific rights and remedies of
Lender shall not be deemed to limit or exclude any other rights to which Lender may be or become entitled
under the Loan Documents, at law, in equity or otherwise.

In no event and under no circumstance shall any past, present or future discussions or written
communications with Lender and/or Lender's delay or forbearance from exercising any of its rights or
remedies under the Loan Documents: (i) cause a modification of the Loan Documents; (ii) establish a
custom or course of dealing under the Loan Documents; (iii) operate as a waiver of any existing or future
Event of Default under the Loan Documents; (iv) entitle you to any other or further notice or demand; (v)
modify, change, impair, affect, diminish or release any of your obligations or liabilities under the Loan
Documents; (vi) impair any other notice of default Lender has delivered (or will deliver), (vii) constitute an

agreement of Lender to agree to any modification of the Loan Documents, or (viii) waive, limit, suspend or condition Lender's rights and remedies under the Loan Documents, all of which rights and remedies are expressly reserved.

Very truly yours,

Fifth Third Bank, National Association

By:
Name:  Mark Peterson
Title:  Senior Vice President

cc: Via Federal Express

Golden Steves & Gordon LLP
200 East Basse Road, Suite 200
San Antonio, Texas 78209
Attn: Karl P. Baker



September 3, 2025

**Via Email and Overnight Mail**
TAWR Property Owner, Ltd.
200 East Basse Road, Suite 300
San Antonio, Texas 78209
Attn: Darren Casey

Darren B. Casey
200 East Basse Road, Suite 300
San Antonio, Texas 78209

Re:     **NOTICE OF DEFAULTS AND RESERVATION OF RIGHTS LETTER**

Ladies and Gentlemen:

Reference is made to that certain Construction Loan Agreement dated as of May 27, 2022 (as amended, restated, extended, supplemented or otherwise modified from time to time, the "***Loan Agreement***"), by and between TAWR Property Owner, LLC ("***Borrower***") and Fifth Third Bank, National Association ("***Lender***").  Unless otherwise defined herein, capitalized terms used herein shall have the meanings provided in the Loan Agreement.

As you are aware, the following Events of Default have occurred and are continuing (collectively, the "***Specified Defaults***"): (a) an Event of Default under Section 11.1(a)(i) of the Loan Agreement, as a result of Borrower's failure to pay to Lender accrued interest due on August 1, 2025 within five (5) days of such due date; (b) an Event of Default under Section 11.1(dd) of the Loan Agreement, as a result of Borrower's failure to maintain the required Debt Service Coverage Ratio for the Quarter ended June 30, 2025, as required under Section 9.10 of the Loan Agreement; (c) an Event of Default under Section 11.1(b) of the Loan Agreement, as a result of Borrower's failure to deliver to Lender a copy of the executed Collateral Assignment and Subordination of Property Management Agreement, in form reasonably acceptable to Lender, prior to the time set forth on Exhibit M to the Loan Agreement, as required under Section 3.1 of the Loan Agreement; and (d) an Event of Default under Section 11.1(b) of the Loan Agreement, as a result of Borrower's failure to maintain all deposit and other accounts with Lender, as required under Section 8.8 of the Loan Agreement.

Please note that the foregoing list is not meant to be an exhaustive or all-encompassing list of all of the possible Events of Default that have occurred or may be continuing under the Loan Agreement or any of the other Loan Documents, and that Lender does hereby reserve and preserve any and all past, present or future violations or Events of Default under the Loan Agreement and the other Loan Documents.  As a result of the Specified Defaults, Lender is entitled to, and may at any time and in its sole and absolute discretion, without notice, presentment or protest, exercise any and all default-related rights, privileges, powers and remedies under the Loan Agreement, the other Loan Documents and applicable law.

       **As a result of the occurrence and continuance of the Specified Defaults, you are hereby notified that Lender reserves the right to charge interest at the Default Rate of the Interest Rate plus four percent (4%) retroactive to the time of occurrence of the first Event of Default. In accordance with Lender's rights, privileges, powers and remedies, Lender has no obligation to make any further Loans or otherwise extend credit to Borrower under the Loan Agreement or otherwise, and any such further Loans shall be in Lender's sole and absolute discretion and may be subject to such further terms and conditions as Lender may, in its sole discretion require. In addition, by no later than September 30, 2025, Borrower shall take all reasonable steps for Lender to obtain control of all deposit and other accounts held at any other depositary institution other than Lender, by, among other things, delivering to Lender a control agreement, in form and substance reasonably satisfactory to Lender, executed by Borrower, Lender and the applicable depositary institution.**

       Lender expressly reserves all of its rights, powers, privileges and remedies under the Loan Agreement and all other Loan Documents. Lender may elect to exercise any or all of its rights, at its sole option, at any time hereafter, without the necessity of any further notice, demand or other action on the part of Lender. Nothing contained in this letter or any delay by Lender in exercising any rights, powers, privileges and remedies under the Loan Agreement, the other Loan Documents or applicable law with respect to any Specified Default or any other default or Events of Default now existing or hereafter arising under the Loan Agreement and other Loan Documents shall be construed as a waiver or modification of such rights, powers, privileges and remedies. The failure of Lender to exercise any such rights, powers, privileges and remedies is not intended, and shall not be construed, to be a waiver of any such Event of Default (including, without limitation, the Specified Defaults).

       Any partial payment by Borrower, any Guarantor or any other person or entity of any amount owing under the Loan Agreement or any of the other Loan Documents may, at Lender's option, be accepted and applied on account of any obligations under such documents. If so accepted, however, such partial payment shall be without waiver of or prejudice to any rights or remedies available to Lender on account of any violations of the Loan Agreement or any of the other Loan Documents and shall not constitute a satisfaction or an accord and satisfaction of the any of the obligations.

       Lender acknowledges that discussions addressing the Specified Defaults may have taken place and/or may take place in the future. The holding of any discussions between or among any or all of Lender and Borrower regarding the administration of the obligations or proposals regarding amendments to, or modifications or restructurings of the Loan Agreement or any other Loan Document, shall not constitute any waiver of any default or Event of Default (including, without limitation, any Specified Default), or an agreement to forbear from the exercise of Lender's rights and remedies under the Loan Agreement, any other Loan Document or applicable law, nor shall it be construed as an undertaking by Lender to continue such discussions or to enter into any such amendments, modifications or restructurings. During the course of such discussions, Lender and Borrower may touch upon and possibly reach a preliminary understanding on one or more issues prior to concluding negotiations. Notwithstanding this fact and absent an express written waiver by Lender, Lender will not be bound by an agreement on any individual issue unless and until an agreement is reached on all issues and such agreement is reduced to writing and signed by the applicable parties.

       As of the date of this letter, there are no oral agreements between Lender and Borrower and any agreements concerning the obligations are expressed only in the existing Loan Agreement and/or the other

Loan Documents.  The duties and obligations of Borrower and Lender shall be only as set forth in the Loan Agreement and the other Loan Documents.

This letter shall not establish a custom or course of dealing and does not waive, limit or postpone Borrower's liabilities or obligations under the Loan Agreement, the other Loan Documents or otherwise, or any other person or entity obligated thereunder, and any discussions (whether written or oral) that have occurred or which hereafter may occur are not, and shall not be deemed to be, a waiver, limitation or postponement of any of Lender's rights and remedies under the Loan Agreement, the other Loan Documents or applicable law, all of which rights and remedies hereby expressly are reserved.  Nothing contained in this letter shall confer on Borrower, any Guarantor or any other person or entity any right to other or further notice or cure periods with respect to the Specified Defaults.

**[SIGNATURE APPEARS ON THE FOLLOWING PAGE]**

Sincerely,

**FIFTH THIRD BANK, NATIONAL ASSOCIATION**

By: _____

Name: Nicholas Haas

Title: Vice President

cc: Golden Steves & Gordon LLP
200 East Basse Road, Suite 200
San Antonio, Texas 78209
Attention: Karl P. Baker



November 25, 2025

**Via Email/Facsimile and Overnight Mail**
TAWR Property Owner, Ltd.
200 East Basse Road, Suite 300
San Antonio, Texas 78209
Attn: Darren Casey

Darren B. Casey
200 East Basse Road, Suite 300
San Antonio, Texas 78209

Tacara Investor LP
8500 East 116th Street, #742
Fishers, IN 46038
Facsimile No.: (615) 895-2631

Re:  **NOTICE OF DEFAULTS AND EVENTS OF DEFAULT, PURCHASE OPTION EVENT, AND RESERVATION OF RIGHTS**

Ladies and Gentlemen:

Reference is made to (a) that certain Construction Loan Agreement dated as of May 27, 2022 (as amended, restated, extended, supplemented or otherwise modified from time to time, the "***Loan Agreement***"), by and between TAWR Property Owner, Ltd. ("***Borrower***") and Fifth Third Bank, National Association ("***Lender***"); (b) that certain Guaranty of Payment and Carry dated as of May 27, 2022 (as amended, restated, extended, supplemented or otherwise modified from time to time, the "***Guaranty***"), by Darren B. Casey for the benefit of Lender; (c) that certain Promissory Note dated May 27, 2022 (the "***Note***"), by Borrower in favor of Lender; and (d) all other agreements, instruments, and documents executed in connection therewith. All of the foregoing, as amended, restated, extended, supplemented or otherwise modified from time to time, are referred to herein collectively as the "***Loan Documents***." Unless otherwise defined herein, capitalized terms used herein shall have the meanings provided in the Loan Agreement or the other Loan Documents, as applicable.

For purposes of this notice, the term "***Existing Events of Default***" means collectively (i) the Specified Defaults described in Lender's letter dated September 3, 2025, and (ii) any additional Events of Default that have occurred and are continuing under the Loan Agreement and other Loan Documents, including, without limitation, the Breaches described herein relating to the filing certain Liens against the Property.

As you are aware from our letter dated September 3, 2025, various Events of Default, defined and described therein as the "***Specified Defaults***," have occurred and are continuing under the Loan Agreement. It has also come to the attention of Lender that certain mechanics liens, which constitute additional breaches of the Loan Agreement, have been recorded against the Property. The filing of the mechanics liens

(collectively, the "**Breaches**") constitutes a violation of the Loan Agreement. Pursuant to Section 6.8 of the Loan Agreement, you have ten (10) Business Days from the date of this notice to resolve the Breaches by paying and discharging, bonding over, or properly contesting the Liens in strict accordance with the Loan Agreement and Security Instrument.

**As a result of the occurrence and continuance of the Existing Events of Default, you are hereby notified that Lender reserves the right to charge interest at the Default Rate of the Interest Rate plus four percent (4%) retroactive to the time of occurrence of the first Event of Default. In accordance with Lender's rights, privileges, powers and remedies, Lender has no obligation to make any further Loans or otherwise extend credit to Borrower under the Loan Agreement or otherwise, and any such further Loans shall be in Lender's sole and absolute discretion and may be subject to such further terms and conditions as Lender may, in its sole discretion require. In addition, by no later than December 31, 2025, Borrower shall take all reasonable steps for Lender to obtain control of all deposit and other accounts held at any other depositary institution other than Lender, by, among other things, delivering to Lender a control agreement, in form and substance reasonably satisfactory to Lender, executed by Borrower, Lender and the applicable depositary institution.**

This letter also serves as a Purchase Option Notice to Tacara Investor LP ("**Investor**") pursuant to Section 11.5 of the Loan Agreement. Lender hereby provides notice of its intent to exercise remedies under the Loan Agreement, including receivership or foreclosure, and acknowledges that the Investor has the right to exercise its purchase option in accordance with the terms and conditions set forth in Section 11.5. In accordance with Section 11.5, the Loan Purchase Price is equal to the outstanding principal balance of the Note, which is $39,119,607.83 (as of November 25, 2025), together with all accrued interest and other amounts due thereon that are required to be paid by Borrower under the Loan Documents, including, without limitation, all costs and expenses (including legal fees and expenses) incurred by Lender in enforcing the terms of the Loan Documents.

Lender expressly reserves all of its rights, powers, privileges, and remedies under the Loan Agreement and all other Loan Documents. Lender may elect to exercise any or all of its rights, at its sole option, at any time hereafter, without the necessity of any further notice, demand, or other action on the part of Lender. Nothing contained in this letter, nor any delay by Lender in exercising any rights, powers, privileges, or remedies under the Loan Agreement, the other Loan Documents, or applicable law with respect to any existing or future Event of Default, shall be construed as a waiver or modification of such rights, powers, privileges, or remedies. The failure of Lender to exercise any such rights, powers, privileges, or remedies is not intended, and shall not be construed, to be a waiver of any such Event of Default (including, without limitation, the Existing Events of Default).

Any partial payment by Borrower, any Guarantor, or any other person or entity of any amount owing under the Loan Agreement or any of the other Loan Documents may, at Lender's option, be accepted and applied on account of any obligations under such documents. If so accepted, however, such partial payment shall be without waiver of or prejudice to any rights or remedies available to Lender on account of any violations of the Loan Agreement or any of the other Loan Documents, and shall not constitute a satisfaction or an accord and satisfaction of any of the obligations.

Lender acknowledges that discussions addressing the Existing Events of Default may have taken place and/or may take place in the future. The holding of any discussions between or among any or all of

TAWR Property Owner, Ltd.
Darren B. Casey
Tacara Investor LP
November 25, 2025
Page 3

Lender and Borrower regarding the administration of the obligations or proposals regarding amendments to, or modifications or restructurings of, the Loan Agreement or any other Loan Document shall not constitute any waiver of any default or Event of Default (including, without limitation, any Existing Events of Default), or an agreement to forbear from the exercise of Lender's rights and remedies under the Loan Agreement or any other Loan Document or applicable law, nor shall it be construed as an undertaking by Lender to continue such discussions or to enter into any such amendments, modifications, or restructurings. During the course of such discussions, Lender and Borrower may touch upon and possibly reach a preliminary understanding on one or more issues prior to concluding negotiations. Notwithstanding this fact and absent an express written waiver by Lender, Lender will not be bound by an agreement on any individual issue unless and until an agreement is reached on all issues and such agreement is reduced to writing and signed by the applicable parties.

As of the date of this letter, there are no oral agreements between Lender and Borrower, and any agreements concerning the obligations are expressed only in the existing Loan Agreement and the other Loan Documents. The duties and obligations of Borrower and Lender shall be only as set forth in the Loan Agreement and the other Loan Documents.

This letter shall not establish a custom or course of dealing and does not waive, limit, or postpone Borrower's liabilities or obligations under the Loan Agreement, the other Loan Documents, or otherwise, or any other person or entity obligated thereunder. Any discussions (whether written or oral) that have occurred or which hereafter may occur are not, and shall not be deemed to be, a waiver, limitation, or postponement of any of Lender's rights and remedies under the Loan Agreement or the other Loan Documents or applicable law, all of which rights and remedies hereby expressly are reserved. Nothing contained in this letter shall confer on Borrower, any Guarantor, or any other person or entity any right to other or further notice or cure periods with respect to the Existing Events of Default.

**[SIGNATURE APPEARS ON THE FOLLOWING PAGE]**

TAWR Property Owner, Ltd.
Darren B. Casey
Tacara Investor LP
November 25, 2025
Page 4

Sincerely,

**FIFTH THIRD BANK, NATIONAL ASSOCIATION**

By:
Name:   Nicholas Haas
Title:    Vice President

cc:     Golden Steves & Gordon LLP
        200 East Basse Road, Suite 200
        San Antonio, Texas 78209
        Attn: Lane Golden (lgolden@goldensteves.com)



January 15, 2026

**<u>Via Email/Facsimile and Overnight Mail</u>**
TAWR Property Owner, Ltd.
200 East Basse Road, Suite 300
San Antonio, Texas 78209
Attn: Darren Casey

Darren B. Casey
200 East Basse Road, Suite 300
San Antonio, Texas 78209

      Re:     **NOTICE OF DEFAULTS AND EVENTS OF DEFAULT AND RESERVATION OF RIGHTS**

Ladies and Gentlemen:

Reference is made to (a) that certain Construction Loan Agreement dated as of May 27, 2022 (as amended, restated, extended, supplemented or otherwise modified from time to time, the "***Loan Agreement***"), by and between TAWR Property Owner, Ltd. ("***Borrower***") and Fifth Third Bank, National Association ("***Lender***"); (b) that certain Guaranty of Payment and Carry dated as of May 27, 2022, by Darren B. Casey for the benefit of Lender; (c) that certain Guaranty of Completion dated as of May 27, 2022, by Darren B. Casey for the benefit of Lender; (d) that certain Promissory Note dated May 27, 2022 (the "***Note***"), by Borrower in favor of Lender; and (e) all other agreements, instruments, and documents executed in connection therewith. All of the foregoing, as amended, restated, extended, supplemented or otherwise modified from time to time, are referred to herein collectively as the "***Loan Documents***." Unless otherwise defined herein, capitalized terms used herein shall have the meanings provided in the Loan Agreement or the other Loan Documents, as applicable.

As you are aware from our letters dated May 14, 2025, September 3, 2025 and November 25, 2025, various Events of Default, defined and described therein as the "***Specified Defaults***" and "***Existing Events of Default***," respectively, have occurred and are continuing under the Loan Agreement. In addition, the following additional Events of Default have occurred and are continuing under the Credit Agreement (collectively, the "***Additional Events of Default***," and together with the Specified Defaults and Existing Events of Default, the "***Existing Defaults***"): (a) an Event of Default under <u>Section 11.1(a)</u> of the Loan Agreement as a result of Borrower's failure pay the accrued interest payment due January 2, 2026 in the amount of $212,221.01 (the "***Past-Due Interest Payment***") within five (5) days of such Interest Payment Date; and (b) an Event of Default under <u>Section 11.1(a)</u> of the Loan Agreement as a result of Borrower's failure pay the monthly payment due January 2, 2026 in the amount of $66,250.00 (the "***Past-Due Principal Payment***") within five (5) days of such Interest Payment Date.

Please note that the foregoing list is not meant to be an exhaustive or all-encompassing list of all of the possible Events of Default that have occurred or may be continuing under the Loan Agreement or any of the other Loan Documents, and that Lender does hereby reserve and preserve any and all past, present

or future violations or Events of Default under the Loan Agreement and the other Loan Documents. As a result of the Existing Defaults, Lender is entitled to, and may at any time and in its sole and absolute discretion, without notice, presentment or protest, exercise any and all default-related rights, privileges, powers and remedies under the Loan Agreement, the other Loan Documents and applicable law.

As a result of the occurrence and continuance of the Existing Defaults, you are hereby notified that Lender reserves the right to charge interest at the Default Rate of the Interest Rate plus four percent (4%) retroactive to the time of occurrence of the first Event of Default. In the event Borrower fails to pay the Past-Due Interest Payment, the Past-Due Principal Payment, and any applicable late fees on or prior to close of business on January 16, 2026, (a) interest at the Default Rate shall commence accruing on January 17, 2026, retroactive to January 2, 2026, until all of the Obligations under the Loan Agreement are paid in full and (b) Lender reserves the right to charge interest at the Default Rate retroactive to the time of occurrence of the first Event of Default in the aggregate amount of not less than $1,008,416.56 (from May 14, 2025 through January 1, 2026).

**In accordance with Lender's rights, privileges, powers and remedies, Lender has no obligation to make any further Loans or otherwise extend credit to Borrower under the Loan Agreement or otherwise, and any such further Loans shall be in Lender's sole and absolute discretion and may be subject to such further terms and conditions as Lender may, in its sole discretion require. In addition, by no later than January 30, 2026, Borrower shall take all reasonable steps for Lender to obtain control of all deposit and other accounts held at any other depositary institution other than Lender, by, among other things, delivering to Lender a control agreement, in form and substance reasonably satisfactory to Lender, executed by Borrower, Lender and the applicable depositary institution.**

Lender expressly reserves all of its rights, powers, privileges, and remedies under the Loan Agreement and all other Loan Documents. Lender may elect to exercise any or all of its rights, at its sole option, at any time hereafter, without the necessity of any further notice, demand, or other action on the part of Lender. Nothing contained in this letter, nor any delay by Lender in exercising any rights, powers, privileges, or remedies under the Loan Agreement, the other Loan Documents, or applicable law with respect to any existing or future Event of Default, shall be construed as a waiver or modification of such rights, powers, privileges, or remedies. The failure of Lender to exercise any such rights, powers, privileges, or remedies is not intended, and shall not be construed, to be a waiver of any such Event of Default (including, without limitation, the Existing Defaults).

Any partial payment by Borrower, any Guarantor, or any other person or entity of any amount owing under the Loan Agreement or any of the other Loan Documents may, at Lender's option, be accepted and applied on account of any obligations under such documents. If so accepted, however, such partial payment shall be without waiver of or prejudice to any rights or remedies available to Lender on account of any violations of the Loan Agreement or any of the other Loan Documents, and shall not constitute a satisfaction or an accord and satisfaction of any of the obligations.

Lender acknowledges that discussions addressing the Existing Defaults may have taken place and/or may take place in the future. The holding of any discussions between or among any or all of Lender and Borrower regarding the administration of the obligations or proposals regarding amendments to, or modifications or restructurings of, the Loan Agreement or any other Loan Document shall not constitute

any waiver of any default or Event of Default (including, without limitation, any Existing Defaults), or an agreement to forbear from the exercise of Lender's rights and remedies under the Loan Agreement or any other Loan Document or applicable law, nor shall it be construed as an undertaking by Lender to continue such discussions or to enter into any such amendments, modifications, or restructurings. During the course of such discussions, Lender and Borrower may touch upon and possibly reach a preliminary understanding on one or more issues prior to concluding negotiations. Notwithstanding this fact and absent an express written waiver by Lender, Lender will not be bound by an agreement on any individual issue unless and until an agreement is reached on all issues and such agreement is reduced to writing and signed by the applicable parties.

As of the date of this letter, there are no oral agreements between Lender and Borrower, and any agreements concerning the obligations are expressed only in the existing Loan Agreement and the other Loan Documents. The duties and obligations of Borrower and Lender shall be only as set forth in the Loan Agreement and the other Loan Documents.

This letter shall not establish a custom or course of dealing and does not waive, limit, or postpone Borrower's liabilities or obligations under the Loan Agreement, the other Loan Documents, or otherwise, or any other person or entity obligated thereunder. Any discussions (whether written or oral) that have occurred or which hereafter may occur are not, and shall not be deemed to be, a waiver, limitation, or postponement of any of Lender's rights and remedies under the Loan Agreement or the other Loan Documents or applicable law, all of which rights and remedies hereby expressly are reserved. Nothing contained in this letter shall confer on Borrower, any Guarantor, or any other person or entity any right to other or further notice or cure periods with respect to the Existing Defaults.

**[SIGNATURE APPEARS ON THE FOLLOWING PAGE]**

TAWR Property Owner, Ltd.
Darren B. Casey
January 15, 2026
Page 4

Sincerely,

**FIFTH THIRD BANK, NATIONAL ASSOCIATION**

By: _____
Name:  Nicholas Haas
Title:   Vice President

cc:     Golden Steves & Gordon LLP
        200 East Basse Road, Suite 200
        San Antonio, Texas 78209
        Attn: Lane Golden (lgolden@goldensteves.com)



February 3, 2026

<u>**Via Email/Facsimile and Overnight Mail**</u>
TAWR Property Owner, Ltd.
200 East Basse Road, Suite 300
San Antonio, Texas 78209
Attn: Darren Casey

Darren B. Casey
200 East Basse Road, Suite 300
San Antonio, Texas 78209

  Re:  **NOTICE OF DEFAULTS AND EVENTS OF DEFAULT, ACCELERATION, AND RESERVATION OF RIGHTS**

Ladies and Gentlemen:

  Reference is made to (a) that certain Construction Loan Agreement dated as of May 27, 2022 (as amended, restated, extended, supplemented or otherwise modified from time to time, the "***Loan Agreement***"), by and between TAWR Property Owner, Ltd. ("***Borrower***") and Fifth Third Bank, National Association ("***Lender***"); (b) that certain Guaranty of Payment and Carry dated as of May 27, 2022, by Darren B. Casey for the benefit of Lender; (c) that certain Guaranty of Completion dated as of May 27, 2022, by Darren B. Casey for the benefit of Lender; (d) that certain Promissory Note dated May 27, 2022 (the "***Note***"), by Borrower in favor of Lender; and (e) all other agreements, instruments, and documents executed in connection therewith. All of the foregoing, as amended, restated, extended, supplemented or otherwise modified from time to time, are referred to herein collectively as the "***Loan Documents***." Unless otherwise defined herein, capitalized terms used herein shall have the meanings provided in the Loan Agreement or the other Loan Documents, as applicable.

  As you are aware from our letters dated May 14, 2025, September 3, 2025, November 25, 2025, and January 15, 2026, various Events of Default, defined and described therein as the "***Specified Defaults***," "***Existing Events of Default***," and "***Existing Defaults***," respectively, have occurred and are continuing under the Loan Agreement (collectively, the "***Existing EODs***"). In addition, the following Events of Default are anticipated to occur upon passage of any applicable cure periods (collectively, the "***Anticipated Defaults***"): (a) Borrower's failure to pay the real property taxes due January 31, 2026 in the amount of not less than $1,420,689.79 when due and payable as required under <u>Section 8.13(a)</u> of the Loan Agreement, which will result in an Event of Default under <u>Section 11.1(b)</u> of the Loan Agreement upon the passage of any applicable cure period; (b) Borrower's failure pay the accrued interest payment due February 2, 2026 in the amount of $212,221.01, which will result in an Event of Default under <u>Section 11.1(a)</u> of the Loan Agreement upon the passage of any applicable cure period; and (c) Borrower's failure pay the monthly payment due February 2, 2026 in the amount of $66,250.00, which will result in an Event of Default under <u>Section 11.1(a)</u> of the Loan Agreement upon the passage of any applicable cure period.

Please note that the foregoing list is not meant to be an exhaustive or all-encompassing list of all of the possible Defaults and Events of Default that have occurred or may be continuing under the Loan Agreement or any of the other Loan Documents, and that Lender hereby reserves and preserves any and all past, present or future violations or Defaults or Events of Default under the Loan Agreement and the other Loan Documents. As a result of the Existing EODs and the Anticipated Defaults, to the extent they occur, Lender is entitled to, and may at any time and in its sole and absolute discretion, without notice, presentment or protest, exercise any and all default-related rights, privileges, powers and remedies under the Loan Agreement, the other Loan Documents and applicable law.

As a result of the occurrence and continuance of the Existing EODs, you are hereby notified that (a) due to Borrower's failure to pay the Past-Due Interest Payment, the Past-Due Principal Payment (both as defined in the letter dated January 15, 2026), and any applicable late fees, on or prior to close of business on January 16, 2026, interest at the Default Rate of the Interest Rate plus four percent (4%) commenced accruing on January 17, 2026, retroactive to January 2, 2026, and shall continue to accrue at the Default Rate until all of the Obligations under the Loan Agreement are paid in full, (b) Lender reserves the right to charge interest at the Default Rate retroactive to the time of occurrence of the first Event of Default in the aggregate amount of not less than $1,008,416.56 (from May 14, 2025 through January 1, 2026), and (c) Lender hereby (i) terminates any and all of its commitments to lend or extend any credit to Borrower, (ii) declares all of the indebtedness and obligations of Borrower under the Loan Agreement and the other Loan Documents, including, without limitation, all principal, accrued and unpaid interest, all costs, fees, expenses and all other items payable under the Loan Documents, (collectively, the "**Liabilities**") to be immediately due and payable, and (iii) demands that all such amounts be paid immediately to Lender.

Without limiting the foregoing, Lender hereby notifies Borrower that **ALL OBLIGATIONS ARE IMMEDIATELY DUE AND PAYABLE WITHOUT DEMAND, NOTICE, PRESENTMENT OR PROTEST OR FURTHER ACTION OF ANY KIND AS MORE FULLY SET FORTH IN THE NOTE AND THE LOAN AGREEMENT, AND DEMAND IS HEREBY MADE FOR FULL PAYMENT OF ALL OBLIGATIONS UNDER THE NOTE, THE LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS**. As of the date hereof, the aggregate outstanding principal amount of the Loans is $39,053,357.83, the accrued and unpaid interest thereon is $577,100.96 (excluding interest at the Default Rate from May 14, 2025 through January 1, 2026), and the accrued and unpaid late fees is $14,379.96 (collectively, the "**Outstanding Amount**"). The Outstanding Amount does not include all of the fees, costs and expenses to which Lender is entitled under the Loan Documents, including, without limitation, legal fees and expenses (which have been incurred and with continue to be incurred) or interest at the Default Rate from May 14, 2025 through January 1, 2026. Borrower also is and will be indebted to Lender for interest and fees as they continue to accrue from the date hereof until full payment is made of the Obligations and all legal fees and costs and expenses which Lender incurs prior to the date hereof or hereafter in connection with or related to the Loan Agreement (including, without limitation, in connection with enforcing, protecting, preserving or defending its rights under or in respect of the Loan Agreement, the other Loan Documents, and the collateral.

Lender expressly reserves all of its rights, powers, privileges, and remedies under the Loan Agreement and all other Loan Documents, including, without limitation, to: (a) collect the Loans and other Liabilities from Borrower and/or Guarantor; (b) commence and prosecute any legal or equitable action against any Guarantor, including enforcement of any or all guaranties; (c) foreclose upon all or any

portion of the collateral; (d) seek the appointment of a receiver, trustee, or similar custodian for the collateral or any portion thereof; and (e) exercise any and all of Lender's other rights and remedies, whether provided under the Loan Agreement, any of the other Loan Documents, or applicable law. Lender may elect to exercise any or all of its rights, in its discretion, at any time hereafter, without the necessity of any further notice, demand, or other action on the part of Lender. Nothing contained in this letter, nor any delay by Lender in exercising any rights, powers, privileges, or remedies under the Loan Agreement, the other Loan Documents, or applicable law with respect to any existing or future Event of Default, shall be construed as a waiver or modification of such rights, powers, privileges, or remedies. The failure of Lender to exercise any such rights, powers, privileges, or remedies is not intended, and shall not be construed, to be a waiver of any such Event of Default (including, without limitation, the Existing EODs and the Anticipated Defaults, to the extent they occur).

Any partial payment by Borrower, any Guarantor, or any other person or entity of any amount owing under the Loan Agreement or any of the other Loan Documents may, at Lender's option, be accepted and applied on account of any obligations under such documents. If so accepted, however, such partial payment shall be without waiver of or prejudice to any rights or remedies available to Lender on account of any violations of the Loan Agreement or any of the other Loan Documents, and shall not constitute a satisfaction or an accord and satisfaction of any of the obligations.

Lender acknowledges that discussions addressing the Existing EODs and the Anticipated Defaults may have taken place and/or may take place in the future. The holding of any discussions between or among any or all of Lender and Borrower regarding the administration of the obligations or proposals regarding amendments to, or modifications or restructurings of, the Loan Agreement or any other Loan Document shall not constitute any waiver of any default or Event of Default (including, without limitation, any Existing EODs and the Anticipated Defaults, to the extent they occur), or an agreement to forbear from the exercise of Lender's rights and remedies under the Loan Agreement or any other Loan Document or applicable law, nor shall it be construed as an undertaking by Lender to continue such discussions or to enter into any such amendments, modifications, or restructurings. During the course of such discussions, Lender and Borrower may touch upon and possibly reach a preliminary understanding on one or more issues prior to concluding negotiations. Notwithstanding this fact and absent an express written waiver by Lender, Lender will not be bound by an agreement on any individual issue unless and until an agreement is reached on all issues and such agreement is reduced to writing and signed by the applicable parties.

As of the date of this letter, there are no oral agreements between Lender and Borrower, and any agreements concerning the obligations are expressed only in the existing Loan Agreement and the other Loan Documents. The duties and obligations of Borrower and Lender shall be only as set forth in the Loan Agreement and the other Loan Documents.

This letter shall not establish a custom or course of dealing and does not waive, limit, or postpone Borrower's liabilities or obligations under the Loan Agreement, the other Loan Documents, or otherwise, or any other person or entity obligated thereunder. Any discussions (whether written or oral) that have occurred or which hereafter may occur are not, and shall not be deemed to be, a waiver, limitation, or postponement of any of Lender's rights and remedies under the Loan Agreement or the other Loan Documents or applicable law, all of which rights and remedies hereby expressly are reserved. Nothing contained in this letter shall confer on Borrower, any Guarantor, or any other person or entity any right to other or further notice or cure periods with respect to the Existing EODs or the Anticipated Defaults.

**[SIGNATURE APPEARS ON THE FOLLOWING PAGE]**

TAWR Property Owner, Ltd.
Darren B. Casey
February 3, 2026
Page 5

Sincerely,

**FIFTH THIRD BANK, NATIONAL ASSOCIATION**

By: _____

Name:  Nicholas Haas
Title:   Vice President

cc:      Golden Steves & Gordon LLP
         200 East Basse Road, Suite 200
         San Antonio, Texas 78209
         Attn: Lane Golden (lgolden@goldensteves.com)